IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TAMARA LAWAN JONES                                                                PLAINTIFF

vs.                                        Civil No. 4:17-cv-04004

NANCY A. BERRYHILL                                                                DEFENDANT
Acting Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Tamara Lawan Jones ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") and a period of disability under Title II of the Act.

The Parties have consented to the jurisdiction of a Magistrate Judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 5.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.   Background:**

Plaintiff protectively filed her disability application on June 3, 2014. (Tr. 21, 169-177). Plaintiff alleges being disabled due to rheumatoid arthritis, sleeping problems, pain, and depression. (Tr. 81, 215, 259). Plaintiff alleges an onset date of January 23, 2014. (Tr. 21, 171). The application was denied initially and again upon reconsideration. (Tr. 80, 93, 107-109, 115-116).

Thereafter, Plaintiff requested an administrative hearing on her denied application. (Tr. 117-

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "Tr."

1

118). The administrative law judge ("ALJ") granted that request and held an administrative video hearing on May 11, 2016. (Tr. 39-79). The ALJ presided over the hearing from McAlester, Oklahoma, and the Plaintiff appeared in Texarkana, Arkansas. *Id.* At the hearing, Plaintiff was present and was represented by Gregory R. Giles. *Id.* Vocational Expert ("VE") Diana L. Kizer also testified at this hearing. *Id.*

At this hearing, Plaintiff testified he was thirty (30) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563© (DIB). (Tr. 42). As for her level of education, Plaintiff testified she completed high school. (Tr. 43-44).

After this hearing, on June 13, 2016, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (Tr. 21-38). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2019. (Tr. 23, Finding 1). The ALJ found Plaintiff had engaged in Substantial Gainful Activity ("SGA") during the period of October 2014 through December 2014 with earnings of $3,715.00 for the 4th quarter of 2014. (Tr. 23, Finding 2). However, there has been a continuous 12-month period , during which, Plaintiff did not engage in SGA. (Tr. 23, Finding 3). The remaining findings address the period the Plaintiff did not engage in SGA. *Id.* The ALJ determined Plaintiff had the following severe impairments: inflammatory arthritis, osteopenia, and major depressive disorder. (Tr. 23-26, Finding 4). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 26-28, Finding 5).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 28-36, Finding 6). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed

limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the RFC to lift 20 pounds occasionally, and lift and carry 10 pounds frequently. The claimant can sit, stand and walk up to 6 hours of each activity per 8-hour day. The claimant has unlimited use of feet for foot controls, with occasional pushing and pulling and overhead reaching with both arms. The claimant has frequent use of the hands for fingering, feeling, and handling. The claimant has frequent balancing, stooping, kneeling, crouching, and crawling, with occasional climbing of ramps, ladders, and scaffolds. In addition, claimant would be limited to work that is of SVP level 3 or less as defined in the Dictionary of Occupational Titles ("DOT") with ability to apply common sense understanding to remember, carry out detailed written or oral instructions and to set realistic goals and plans independently of others. (20 C.F.R. 404.1567(b)).

*Id.*

The ALJ then evaluated Plaintiff's Past Relevant Work ("PRW") and found Plaintiff is able to perform her PRW as a general clerk as it is generally performed. (Tr. 36, Finding 7). The ALJ also considered whether Plaintiff retained the capacity to perform other work existing in significant numbers in the national economy. (Tr. 37-38). The VE testified at the administrative hearing regarding this issue. *Id.* Based upon that testimony, the ALJ determined alternative findings for step five of the sequential evaluation process. *Id.* Plaintiff retained the capacity to perform the following: (1) unit clerk (light, semi-skilled, SVP 3) with 56,000 such jobs in the national economy; (2) information clerk (light, semi-skilled, SVP 2) with 53,000 such jobs in the national economy; and (3) office helper (light, semi-skilled, SVP 2) with 70,000 such jobs in the national economy. *Id.* Because Plaintiff retained the capacity to perform this work, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from January 23, 2014 through the date of his decision. (Tr. 38, Finding 8).

3

Thereafter, Plaintiff requested a review by the Appeals Council. (Tr. 14-16, 285). On January 3, 2017, the Appeals Council denied this request. (Tr. 1-8). On January 19, 2017, Plaintiff filed the present appeal with this Court. ECF No. 1. The Parties consented to the jurisdiction of this Court on November 8, 2016. ECF No. 5. Both Parties have filed appeal briefs. ECF Nos. 11, 12. This case is now ripe for determination.

**2.**     **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2010); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*,

4

160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)©. A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3.** **Discussion:**

In his appeal brief, Plaintiff claims the following: (A) the ALJ erred in finding Plaintiff did not meet Listing 14.09, (B) the ALJ erred in giving no weight to the opinions provided by Plaintiff's

5

treating rheumatologist, Dr. Jonathan Thomas, M.D., and © the ALJ erred in failing to present a proper hypothetical to the VE including Plaintiff's limitations as a result of her rheumatoid arthritis. ECF No. 11 at 1-20. Upon review, the Court agrees the ALJ improperly evaluated the opinions provided by Dr. Thomas. Accordingly, the Court will only address the second argument Plaintiff raised.

Of particular concern to the Court is the lack of weight the ALJ gave to opinions provided by Dr. Thomas. Plaintiff contends the ALJ addressed the records provided by Dr. Thomas to some extent, but failed to the discuss the RFC assessment he completed on July 13, 2016. ECF. No. 11 at 12. Plaintiff also alleges it was unclear why the ALJ failed to discuss the entirety of a medical opinion Dr. Thomas provided in his records on May 12, 2016. ECF No. 11 at 13. Following a thorough review of the record, the Court finds that remand is necessary.

On October 30, 2012, Plaintiff presented herself to Ms. Teresa D. Browne-Carter, P.A. at Choctaw Nation Health Center, and complained of painful swelling in her neck, back, arms, and in multiple joints including her hands, feet, and knees. (Tr. 298). She reported her symptoms started suddenly three months ago. *Id.* Plaintiff stated there were times when she could not walk because of the pain. *Id.* She was also being treated for depression and insomnia. *Id.* Ms. Browne-Carter diagnosed Plaintiff with arthralgia, mood disorder, anemia, and insomnia. *Id.*

On July 10, 2013, Plaintiff presented herself to the emergency department of Wadley Regional Medical Center with joint pain and edema in her left upper extremity and right lower extremity. (Tr. 301-307). Plaintiff was 15 weeks pregnant at the time with her third child. *Id.* Plaintiff had a high erythrocyte sedimentation ("SED') rate of 35 while admitted to the hospital. *Id.*

Upon discharge the next day, Plaintiff was instructed to follow up with a private physician for a referral to a rheumatologist. *Id*.

On February 18, 2014, Plaintiff returned to Choctaw Nation Health Center and saw Dr. John Hoskins, M.D. (Tr. 339-342, 350-353, 360-362). She reported that since giving birth recently her pain has been much worse with severe and painful swelling all over, her knees and hands the worst, she cannot close her hands, and she was no longer working. *Id*. An X-ray of her bilateral hands showed interval erosion base of the second proximal phalanx, juxa articular osteopenia, and the impression was that the findings were consistent with rheumatoid arthritis. *Id*. Dr. Hoskins diagnosed her with rheumatoid arthritis, mood disorder, bilateral knee pain, anemia, and being overweight. *Id*. Dr. Hoskins noted that he was not a rheumatologist, but he was prescribing Plaquenil, a disease-modifying antirheumatic drug ("DMARD"), because Plaintiff was suffering and had no other means to access a rheumatologist in the near future. *Id*. Plaintiff was also prescribed Prednisone with a tapering schedule, Naproxen, and bilateral knee steroid injections were administered. *Id*.

On March 25, 2014, Plaintiff reported to Dr. Hoskins that her symptoms improved when taking Prednisone, but when the tapering process ended her pain worsened. (Tr. 343-345, 358-359). Dr. Hoskins changed Plaintiff's medication regimen by continuing Plaquenil, starting Sulfasalazine, another DMARD, restarting Prednisone for two weeks, discontinuing Naproxen, and prescribing Ibuprofen and Ferrous Sulfate. *Id*. Plaintiff continued to see Dr. Hoskins for follow up visits in April 2014. (Tr. 346-349, 354-357).

On May 6, 2016, Plaintiff presented herself to Dr. Thomas, a rheumatologist, after a referral

7

from her primary care provider due to Plaintiff's rheumatoid arthritis. (Tr. 404). Plaintiff delivered her fourth child on December 16, 2015, and her arthritis flared a month later. *Id*. Plaintiff reported that since starting Plaquenil she has had frequent headaches and vertigo. *Id*. She has also not been sleeping well due to arthritis pain. *Id*. Plaintiff stated she currently has pain and stiffness in both hands, wrists, ankles, and feet. *Id*. Her stiffness lasts longer than two hours in the morning, and she has significant trouble performing her activities of daily living, especially those involving fine motor movements with her hands. *Id*. Plaintiff was also positive for fatigue. *Id*. Plaintiff was under tremendous stress with the expansion of her family, inability to work due to arthritis, she will lose insurance in a few months, and she was in the process of getting a divorce. *Id*. Dr. Thomas noted Plaintiff was tearful and obviously depressed due to her current situation. *Id*.

Upon examination, Plaintiff had mild synovitis in the elbows; moderate synovial thickening and synovitis in both wrists as well as metacarpophalangeal joints 2-5 and proximal interphalangeal joints 2-5 of both hands causing decreased range of motion in the wrists and mild decreased grip and curl in the hands; moderate effusions and synovitis in both knees; moderate synovial thickening and synovitis in both ankles; and mild tenderness with palpation across metatarsophalangeal joints of both feet. (Tr. 408).

Dr. Thomas diagnosed her with rheumatoid arthritis, screening of respiratory tuberculosis, long term high risk drug therapy, depression, and insomnia. (Tr. 408-410). Dr. Thomas wrote that due to Plaintiff's recent development of moderately severe rheumatoid arthritis which significantly flared following her recent pregnancy, Dr. Thomas wanted to start a biologic DMARD such as Actemra in order to achieve quicker control of her arthritis. (Tr. 409). Dr. Thomas also started a low dose of Prednisone, discontinued Plaquenil due to the side effects, and continued Sulfasalazine. *Id*.

Dr. Thomas wrote that if she could not get on Actemra through Choctaw Nation, then she was to start Humira, and he prescribed Methotrexate and Folate as well. *Id*. Plaintiff was not a candidate for potent sleep medication because of her young children. (Tr. 410). Dr. Thomas continued current depression medications, and noted her depression symptoms would improve as her arthritis improves. *Id*. Dr. Thomas explained the severe side effects of the medications he prescribed. *Id*.

Dr. Thomas assessed that Plaintiff had moderately severe arthritis, she should be considered 100 percent disabled, and she cannot be gainfully employed at this time. *Id*. Dr. Thomas opined it could take several months or even a year or two to get her arthritis under control in a perfect situation, furthermore, considering the severity of her arthritis, she may never be able to control it enough to be gainfully employed. *Id*. Dr. Thomas cited to Plaintiff's divorce and insurance changes as factors that could contribute to a lack of access or resources to cover the exorbitantly expensive biologic medications she needs for treatment. *Id*.

On May 11, 2016, objective testing ordered by Dr. Thomas during the office visit revealed the following: labs showed Plaintiff had positive antinuclear antibodies ("ANA") of great than 1:80, rheumatoid factor greater than 80, and nucleolar pattern of 1:640. (Tr. 423-438). X-rays of Plaintiff's bilateral feet showed chronic irregularity and degenerative arthropathy of the fifth metatarsophalangeal joint in each foot. (Tr. 415-416). An X-ray of the left hand revealed proximal carpal degenerative arthropathy. (Tr. 417). An X-ray of her right hand showed degenerative changes in the wrist. (Tr. 418). An X-ray of the left wrist showed degenerative changes most prominent along the proximal carpal row or radiocarpal joint. (Tr. 421). An X-ray of her right wrist revealed proximal carpal degenerative arthropathy. (Tr. 422).

9

Based on the records, Plaintiff had chronic arthritis pain that was supported with objective testing. The gaps in her treatment were explained due to two pregnancies during the relevant time period. Over time, the treatment her physicians prescribed became increasingly aggressive with severe potential side effects. In light of the medical evidence detailing Plaintiff's rheumatoid arthritis, this Court cannot agree with the ALJ's failure to evaluate the medical opinion provided by Dr. Thomas on May 6, 2016 because it was supported by more than just Plaintiff's subjective complaints.

On July 13, 2016, Dr. Thomas, also provided a detailed physical RFC assessment regarding Plaintiff's ability to do work-related activities:

> Dr. Thomas found Plaintiff could occasionally lift and/or carry less than 10 pounds, and frequently lift and/or carry less than 10 pounds. Plaintiff could stand less than 2 hours in an 8-hour workday. Dr. Thomas found Plaintiff could sit less than 6 hours in an 8-hour workday. Plaintiff would require more than normal break-time throughout the workday at unexpected intervals during a work shift of 15-30 minutes every 1-2 hours on an indefinite basis. In addition, Plaintiff could never perform any postural activities, but she could frequently reach, handle, finger, feel, and push or pull. Dr. Thomas assessed Plaintiff should avoid all exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, machinery, and heights. She was capable of tolerating low stress. Plaintiff should use a cane or other assistive device at time when occasionally standing or walking. Dr. Thomas found it was medically necessary for Plaintiff to elevate one or more legs waist high when sitting in a work setting. Plaintiff's condition interferes with her ability to keep the neck in a frequent or constant position. Dr. Thomas assessed Plaintiff cannot do a full time competitive job that requires activity on a sustained basis. Plaintiff's emotional factors also can contribute to the severity of her symptoms and functional limitations. On average, Plaintiff would miss work more than three times a month due to impairments, treatment, or side effects of medication.

(Tr. 439-442).

It is acknowledged that a conclusory checkbox form has little evidentiary value when it "cites no medical evidence, and provides little to no elaboration." *Anderson v. Astrue*, 696 F.3d 790, 794

(8th Cir. 2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)). Although the RFC assessment Dr. Thomas made was in a checklist format, he provided explanations for the exertional limitations he found. Dr. Thomas cited to Plaintiff's diagnosis of severe rheumatoid arthritis in support of the assessed limitations. (Tr. 440). Plaintiff's impairments lasted or can be expected to last at least 12 months, and the symptoms and limitations Dr. Thomas described started in 2013. (Tr. 441). Dr. Thomas also observed objective signs of pain such as redness, swelling, joint deformity, and decreased range of motion in Plaintiff's joints*. Id.* Dr. Thomas assessed Plaintiff's pain was considered severe with a score of 8-10 with 10 being the most severe, meaning she would preclude the activity precipitating the pain. *Id*. Dr. Thomas ultimately determined his findings were based on a reasonable degree of medical certainty. *Id*. The treatment history provided by Dr. Thomas and the medical evidence in the record as a whole supported Dr. Thomas's RFC assessment.

Furthermore, Dr. Thomas is an acceptable medical source that has a treating relationship with the Plaintiff, and he has specialized knowledge about the medical issues related to rheumatology. *See* 20 C.F.R. § 404.1527. In his decision, the ALJ failed to assign any weight to the medical opinions provided by Dr. Thomas. Nevertheless, the ALJ gave merely diminished or limited weight to the remaining opinions in the record, including treating sources. (Tr. 32-35). The only opinions the ALJ accorded significant weight to were the RFC assessments of the full range of light work provided by non-examining, state agency medical consultants. (Tr. 35). Interestingly, the ALJ assigned weight to all the opinions in the record except for Dr. Thomas's medical opinions.

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *See Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The opinions provided by Dr. Thomas were crucial parts of the record that deserved development by the

11

ALJ. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000). In assessing his RFC determination, the ALJ relied upon the findings of non-examining physicians and accorded them significant evidentiary weight. However, the opinions of consulting, non-examining physicians do not provide substantial evidence to support the ALJ's RFC assessment. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). Consequently, because the ALJ failed to evaluate the opinions of a treating specialist, favored assessments by non-examining physicians, and has provided no other medical evidence which would qualify as substantial evidence, the Court finds this case should be reversed and remanded.

**4.     Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 22nd day of March 2018.**

/s/   Barry A. Bryant  
HON. BARRY A. BRYANT  
U.S. MAGISTRATE JUDGE